01
02
03
04
05
06
07
08
09
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DONALD SEARS, | ) | Case No. C04-2511-RSM-JPD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights case brought under the Federal Tort Claims Act and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiff Donald Sears, a former inmate at the Federal Corrections Institution (FCI) in Sheridan, Oregon, seeks to impose liability on the United States, as well as the warden and two unnamed correctional officers of the FCI for their alleged failures in connection with an assault visited upon plaintiff by five co-inmates.  This matter comes before the Court on defendant United States of America's Motion for Partial Summary Judgment.  Dkt. No. 25. After careful consideration of the motion, response, supporting materials, governing law and the balance of the record, the Court recommends that defendant's Motion for Partial Summary Judgment be GRANTED and judgment entered in its favor pursuant to Rule 54(b).

## II.  FACTS AND PROCEDURAL BACKGROUND

Plaintiff was incarcerated at the FCI in Sheridan, Oregon, from September 8, 2000 to July 16, 2004.  On the morning of June 18, 2002, five foreign national co-inmates entered plaintiff's cell and demanded that he pay certain narcotics debts owed by his former cell partner.  Dkt. No. 27-2, Ex. B.  When plaintiff refused, the five co-inmates attacked him, using padlocks attached to belts and the sharp end of a broken broom handle as weapons.  The beating was severe, causing a fractured left orbital bone, an impinged optical nerve, a ruptured spleen, and stab wounds to the face, neck, wrists and chest.  *Id.*  When FCI officials responded to a duress alarm from Unit 3A, Cell 121, they found plaintiff bleeding profusely from his head.  Dkt. No. 26 at 2-3, ¶ 3 (Debra Payne Decl.).  At this time, former FCI Lieutenant Debra Payne briefly questioned plaintiff about the event.  Based on the nature of plaintiff's wounds, Lt. Payne suspected that plaintiff had been the victim of an assault, notwithstanding the fact that plaintiff initially explained that a seizure-induced fall caused his injuries.  *Id.* at 3, ¶ 4.[1]  Moments later, mid-level practitioner Dr. E. Jocson arrived at the scene, observed plaintiff's condition, and ordered that he be evaluated at the FCI Medical Center.  *Id.* at 3-4, ¶ 8.  Shortly thereafter, plaintiff was transported outside the FCI to Willamette Valley Medical Center and later Legacy Emanuel Hospital for medical treatment.

The Bureau of Prisons' post-incident investigation revealed that the night prior to the assault—June 17, 2002—a group of inmates threatened plaintiff with physical harm if he did not pay the drug debt owed by his former cellmate.  *Id.* at 3, ¶ 5.  Plaintiff reportedly refused to pay the debts.  *Id.*  The record reflects that plaintiff did not report this threat or any other prior incident to FCI officials; nor does the record reflect that plaintiff ever filed a request to be transferred or placed in administrative segregation.

---

[1] After speaking with the plaintiff, Lt. Payne took pictures of plaintiff, his cell, and the surrounding areas of Unit 3A.  Dkt. No. 26, at 3, ¶ 4 (Payne Decl.).  Thereafter, she "secured the other inmates in the unit and began performing upper body checks" on those persons.  *Id.* During this investigation, Lt. Payne discovered several items of bloody clothes and bloody broomstick fragments in the unit laundry bin and trash can.  *Id.*; Dkt. No. 27-2, Ex. B.

REPORT AND RECOMMENDATION
PAGE - 2

01       On December 21, 2004, plaintiff filed a 42 U.S.C. § 1983 civil rights complaint against

02  the United States, FCI Warden Robert Hood, and two unnamed FCI correctional officers.

03  Dkt. No. 1.  The complaint alleges that the defendants' conduct in connection with his beating

04  constituted negligence and cruel and unusual punishment in the form of reckless indifference to

05  a substantial risk of harm and to plaintiff's serious medical needs.  *Id.* at 1-2.  Specifically,

06  plaintiff asserts that despite knowing of the wrongful activities engaged in and the serious

07  threat posed by the five co-inmates, defendants (1) failed to take appropriate measures to

08  protect him and prevent the five co-inmates from harming others, including the plaintiff, and

09  (2) failed to provide adequate medical treatment after the assault so as to minimize plaintiff's

10  injuries.  Plaintiff's claims against the United States are brought under the Federal Tort Claims

11  Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680.  Claims for relief against Warden Hood

12  and the correctional officers are brought pursuant to *Bivens v. Six Unknown Named Agents of*

13  *the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

14       Defendant United States of America has moved for partial summary judgment as to the

15  former claim, arguing that plaintiff's failure-to-protect and negligent medical care allegations

16  fail to waive federal sovereign immunity under the FTCA.  Specifically, the United States

17  argues that the discretionary function exception to the FTCA bars plaintiff's failure-to-protect

18  claim, and that it is not liable under the FTCA for the negligent acts or omissions of its medical

19  contractors.  Dkt. No. 25.

20       III.   SUMMARY JUDGMENT STANDARD

21       "Claims lacking merit may be dealt with through summary judgment" under Rule 56 of

22  the Federal Rules of Civil Procedure.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

23  Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to

24  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

25  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

26  matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if it constitutes evidence

with which "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

REPORT AND RECOMMENDATION
PAGE - 3

01 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it

02 "might effect the outcome of the suit under the governing law." *Id.*

03       When applying these standards, the Court must view the evidence and draw reasonable

04 inferences therefrom in the light most favorable to the nonmoving party.  *United States v.*

05 *Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  The moving party can carry its

06 initial burden by producing affirmative evidence that negates an essential element of the

07 nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence

08 needed to satisfy his burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

09 *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

10       Once this has occurred, the procedural burden shifts to the party opposing summary

11 judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the

12 merits of the case. Fed. R. Civ. P. 56(e).  The nonmovant must do more than simply deny the

13 veracity of everything offered or show a mere "metaphysical doubt as to the material facts."

14 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The mere

15 existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute.

16 *Anderson*, 477 U.S. at 252.  To avoid summary judgment, the nonmoving party must, in the

17 words of the Rule, "set forth specific facts showing that there is a genuine issue for trial." Fed.

18 R. Civ. P. 56(e).   The nonmoving party's failure of proof "renders all other facts immaterial,"

19 creating no genuine issue of fact and thereby entitling the moving party to the summary

20 judgment it sought.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

21                        IV.   ANALYSIS

22       A.       A Continuance of Summary Judgment Proceedings Pursuant to Federal
                  Rule of Civil Procedure 56(f) Is Inappropriate in this Case

23

24       Plaintiff's opposition to defendant United States' motion for partial summary judgment

indicated plaintiff's counsel's difficulty in contacting his client for the purpose of completing a

25 declaration in opposition to defendant's motion and discovering further constitutional

26 deprivations and/or tortious conduct by the named defendants. *See* Dkt. No. 27, at 7.   The

REPORT AND RECOMMENDATION
PAGE - 4

01  Court construes this vague statement as a request to stay summary adjudication and extend the

02  discovery period under Fed. R. Civ. P. 56(f).

03      Rule 56(f) provides a device for litigants to avoid summary judgment when they have

04  not had sufficient time to develop affirmative evidence. *United States v. Kitsap Physicians*

05  *Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).  A court "should continue a summary judgment

06  motion upon a good faith showing by affidavit that the continuance is needed to obtain facts

07  essential to preclude summary judgment." *California ex rel. California Dep't of Toxic*

08  *Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).  Specifically, the party

09  seeking the continuance "must show (1) that they have set forth in affidavit form the specific

10  facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that

11  these sought-after facts are 'essential' to resist the summary judgment motion." *Id.*  Failure to

12  comply with these requirements is a proper ground for denying additional discovery and

13  proceeding to summary judgment. *Kitsap Physicians Serv.*, 314 F.3d at 1000.

14      Plaintiff has failed to meet his burden under Rule 56(f).  The declaration submitted by

15  plaintiff's counsel fails to even envisage the particular facts he hopes to elicit from additional

16  discovery, much less show that such facts exist and, if they did exist, how such facts are

17  essential to resist summary adjudication. *Campbell*, 138 F.3d at 779.  Plaintiff's responsive

18  pleadings cannot remedy this failure. *See Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d

19  1439, 1443 (9th Cir. 1986) ("References in memoranda and declarations to a need for

20  discovery do not qualify as motions under Rule 56(f).").  Plaintiff's noncompliance with the

21  terms of Rule 56(f) alone provides an adequate ground for this Court to deny the request for a

22  continuance.

23      In addition, the procedural history of this case counsels against a Rule 56(f)

24  continuance.   Since the commencement of this lawsuit, the Court has granted two discovery

25  continuances, due in part to the perceived complexity of this case and the voluminous

26  discovery involved.  On May 26, 2005, the Court granted an unusual extension of *nine months*

to complete discovery.  Dkt. No. 9.  On April 18, 2006, the Court granted the parties an

REPORT AND RECOMMENDATION
PAGE - 5

01  additional two months to conduct further discovery for many of the same reasons plaintiff

02  provides in his summary judgment response. Dkt. No. 13. Finally, on July 31, 2006, the Court

03  denied defendant's motion to extend the discovery deadline for the limited purpose of filing a

04  motion to compel, as well as the plaintiff's counsel's general request for additional time to

05  communicate with his client. Dkt. No. 24. Both motions were inexplicably filed more than a

06  month beyond the close of discovery. Plaintiff's most recent request is accompanied by no

07  new information, comes well after a year of extra time for discovery, and fails to demonstrate

08  how a continuance would be just or necessary under the circumstances. Accordingly,

09  plaintiff's Rule 56(f) request is denied.

10           B.       Application of Federal Sovereign Immunity and the Federal Tort Claims Act

11           The moving party in this case is the United States of America, a sovereign "immune

12  from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586

13  (1941). Consent is accomplished only to the extent the United States has waived sovereign

14  immunity by enacting a statute consenting to suit. *Id.* The party seeking to sue the federal

15  government bears the burden of showing an unequivocal waiver of immunity. *Baker v. United*

16  *States*, 817 F.2d 560, 562 (9th Cir. 1987). Plaintiff attempts to do so by invoking the FTCA,

17  28 U.S.C. §§ 1346(b)(1), 2671-2680.

18           In enacting the FTCA, Congress expressly and unequivocally abrogated the United

19  States' immunity for claims arising out of the negligent conduct of federal government

20  employees acting within the scope of their employment. *Id.* § 1346(b)(1) (granting jurisdiction

21  over damages claims against the United States "for injury or loss of property, or personal

22  injury or death caused by the negligent or wrongful act or omission of any employee of the

23  Government while acting within the scope of his office or employment."). Under the Act, the

24  government may be held liable for negligence "in the same manner and to the same extent as a

25  private individual under like circumstances." 28 U.S.C. § 2674.

26

REPORT AND RECOMMENDATION
PAGE - 6

C.      The Discretionary Function Exception to the FTCA Bars Relief Against the United States on Plaintiff's Failure-to-Protect Claim

While the FTCA the provides for governmental liability commensurate with that of private parties, its waiver of immunity is not absolute. *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984). Where an exception to the FTCA exists under 28 U.S.C. § 2680, the United States has elected not to waive its immunity from suit, depriving courts of jurisdiction over such claims. *Reed ex rel. Allen v. United States Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000). The exception relevant to the present case precludes suit if the plaintiff's claims stem from a federal employee's exercise of a "discretionary function." 28 U.S.C. § 2680(a). Specifically, § 2680(a) states that the FTCA waiver of immunity does not extend to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.*

While the plaintiff has the burden of establishing genuine issues of material fact as to whether the exception should apply, the government bears the ultimate burden of establishing that the exception applies. *O'Toole v. United States*, 295 F.3d 1029, 1032 (9th Cir. 2002). "All of the factual allegations in the plaintiff's complaint are to be taken as true in reviewing a discretionary function exception dismissal under the FTCA." *Id.*

The discretionary function exception to the FTCA marks the boundary between Congress' willingness to impose tort liability on the United States and its desire to prevent the government from being held liable for errors in making policy or formulating laws. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). The difficulty in applying the exception is in determining what constitutes a discretionary function. First, the Court must decide whether the challenged conduct is discretionary, i.e., whether "it involves an element of judgment or choice." *Id.* at 536. "This element is not met 'when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow' and the employee 'has no

REPORT AND RECOMMENDATION
PAGE - 7

01   rightful option but to adhere to the directive.'" *Fang v. United States*, 140 F.3d 1238, 1241

02   (9th Cir. 1998) (quoting *Berkovitz*, 486 U.S. at 536); *see also Conrad v. United States*, 447

03   F.3d 760, 765 (9th Cir. 2006).  If the act is not discretionary, the United States is not immune.

04   *Alfrey v. United States*, 276 F.3d 557, 561 (9th Cir. 2002).

05          Assuming the challenged conduct is discretionary, the Court must next "determine

06   whether that judgment is of the kind that the discretionary function exception was designed to

07   shield." *Berkovitz*, 486 U.S. at 536.   One of Congress' intentions in creating the exception

08   was "to prevent judicial 'second guessing' of legislative and administrative decisions grounded

09   in social, economic, and political policy through the medium of an action in tort." *Fang*, 140

10   F.3d at 1241.  Thus, "[o]nly those exercises of judgment which involve considerations of

11   social, economic, and political policy are excepted from the FTCA by the discretionary

12   function doctrine." *Sigman v. United States*, 217 F.3d 785, 793 (9th Cir. 2000).  The focus of

13   this analysis is not on how or by whom the challenged decisions were made, but rather,

14   whether the such decisions were "*susceptible* to policy analysis." *Alfrey*, 276 F.3d at 562

15   (emphasis added); *see also Varig Airlines*, 467 U.S. at 813 ("[I]t is the nature of the conduct,

16   rather than the status of the actor, that governs whether the discretionary function exception

17   applies in a given case.").

18                    1.   *The Challenged Conduct Was Discretionary*

19          In this case, plaintiff alleges that the inmates who assaulted him were "involved in

20   wrongful activity relating to the use of contraband at the institution," and more importantly,

21   that these "wrongful activities were known in advance to Defendants."  Dkt. No. 1 at 3.

22   Plaintiff further argues that the discretionary function exception is not applicable because the

23   named defendants were proscribed from exercising any judgment or choice in determining

24   whether, how, or when to protect plaintiff from co-inmate violence by exercising adequate

25   control over the individuals who harmed him.   In making this argument, however, plaintiff

26   fails to point to a single mandatory directive regarding these duties, much less create a genuine

      issue of fact that such directives exist.  Instead, plaintiff vaguely asserts that "[t]here would

01  appear to be no valid exercise of discretion or policy which tolerates crime and drug

02  trafficking in a federal prison." Dkt. No. 27, at 7.  This conclusory statement is insufficient to

03  avoid summary judgment. *Accord Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

04          The evidence of record, taken in a light most favorable to the plaintiff, reveals no

05  federal statute, regulation, or policy "specifically prescribing a course of action" regarding the

06  protection of the plaintiff from his attackers that FCI prison officials "have no rightful option

07  but to adhere to.'" *Berkovitz*, 486 U.S. at 536.  Indeed, the evidence of record suggests only

08  the contrary. *See, e.g.*, Dkt. No. 26 at 3, ¶ 6 (Payne Decl.) (explaining that no such

09  regulations or policies exist).  Although the Bureau of Prisons (BOP) has the nondelegable

10  duty to "provide for the safekeeping" of inmates, 18 U.S.C. § 4042, this statute "sets forth no

11  particular conduct the BOP personnel should engage in or avoid while attempting to fulfill

12  their duty to protect inmates." *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997).

13  Even in cases where threats by co-inmates are made known to proper authorities, "federal

14  regulations expressly give prison officials discretion in how to respond." *Alfrey*, 276 F.3d at

15  564; *see also* 28 C.F.R. § 552.10 (authorizing "searches of inmates and of inmate housing and

16  work areas to locate contraband and to deter its introduction and movement," but by

17  "employ[ing] the *least intrusive method of search practicable*") (emphasis added); 28 C.F.R.

18  § 541.10 ("So that inmates may live in a safe and orderly environment . . . [s]taff shall take

19  disciplinary action *at such times and to the degree necessary* to regulate an inmate's

20  behavior[.]") (emphasis added).[2]  Accordingly, the first prong of the discretionary function

21  analysis is satisfied.

22

23

---

24          [2] The Court notes that the Seventh Circuit in *Calderon* determined that § 2680(a)
    barred suit, notwithstanding the fact that the prisoner plaintiff reported to *four* prison officials
25  the threats made by the co-inmate who eventually brutally attacked the plaintiff. *See Calderon*,
    123 F.3d at 950 (finding the challenged decision discretionary where no statute, regulation or
26  policy "set forth a mandatory, non-discretionary disciplinary action which the BOP was
    required to take against [the assailant] prior to his attack on [the plaintiff]").  It is undisputed
    that no such notice was provided by plaintiff to the defendants in the present case.

REPORT AND RECOMMENDATION
PAGE - 9

01       2.     *The Challenged Decisions Involved Public Policy Considerations*

02       Because the defendants' challenged acts involved discretion, the Court must next

03 determine whether the judgment exercised was of the type that the discretionary function

04 exception seeks to protect. *Berkovitz*, 486 U.S. at 536. The Court starts from the premise

05 that "'[w]hen established governmental policy, as expressed or implied by statute, regulation,

06 or agency guidelines, allows a Government agent to exercise discretion, it must be presumed

07 that the agent's acts are grounded in policy when exercising that discretion.'" *Conrad*, 447

08 F.3d at 766 (quoting *United States v. Gaubert*, 499 U.S. 315, 324 (1991)). Even without this

09 presumption, however, the Court finds that the nature of the actions taken by the defendants

10 involved considerations which were, at the very least, "susceptible to policy analysis," *Fang*,

11 140 F.3d at 1241 (quoting *Gaubert*, 499 U.S. at 325).

12       First, the nonconclusory evidence of record establishes the policy-based nature of

13 challenged action. *See, e.g.*, Dkt. No. 26 at 3, ¶ 6 (Payne Decl.) ("The decision as to which

14 inmates should be separated or placed in Administrative Detention was in 2002 and is today a

15 decision that takes into consideration numerous factors, including the safety of inmates, the

16 ability of inmates to move about the facility, general concerns for prison security, and the

17 effective use of limited resources."). There are no genuine issues of material fact in dispute on

18 this matter. Second, the Ninth Circuit has recently held, in a co-inmate violence case involving

19 the same FCI, that "balancing the need to provide inmate security with the rights of inmates to

20 circulate and socialize within the prison involves considerations based upon public policy."

21 *Alfrey*, 276 F.3d 557, 564-65. This conclusion was reached despite the fact that the plaintiff in

22 *Alfrey* "told [an FCI official] that he wanted to change cells because [the co-inmate assailant]

23 had threatened to kill him, wrap him up in paper, and hang him on the door for Martin Luther

24 King Day"—facts noticeably absent in the present case. *Id.* at 560. Decisions about how to

25 monitor inmate behavior in the jail system, how to discipline inmates suspected of illegal

26 activity, and how to balance the duty "to provide inmate security with the rights of inmates to

circulate and socialize within the prison" all necessarily implicate Congress' policy decision to

REPORT AND RECOMMENDATION
PAGE - 10

01  allow the BOP to choose the appropriate means of supervising and protecting inmates.

02  Accordingly, the second prong of the discretionary function analysis is satisfied.[3]

03        Because plaintiff's failure-to-protect claim against the United States falls within the

04  discretionary function exception to the FTCA, it is barred by federal sovereign immunity.

05

06        D.    The United States Is Not Liable Under the FTCA for the Acts or Omissions
              of Its Medical Contractors

07        Plaintiff's final allegation with regard to defendant United States of America complains

08  of negligent medical treatment after the attack. Dkt. No. 1, at 3.   The parties do not dispute

09  that plaintiff received all of this medical treatment from Willamette Valley Medical Center and

10  Legacy Emanuel Hospital. Dkt. No. 26 at 4, ¶ 8; Dkt. No 25, Ex. B. at 1, Ex. E at 5-6.

11        As explained above, the FTCA waives federal sovereign immunity for certain torts

12  committed by federal employees acting within the scope of their employment.  28 U.S.C. §

13  1346(b).  One who is not an "employee " of the federal government cannot subject the United

14  States to liability under the FTCA.  *United States v. Orleans*, 425 U.S. 807, 813 (1976).  The

15  FTCA defines "employee of the government" as

16       officers or employees of any federal agency, members of the military or naval
forces of the United States, members of the National Guard while engaged in

17       training or duty . . ., and persons acting on behalf of a federal agency in an
official capacity, temporarily or permanently in the service of the United States

18       . . . .

19  28 U.S.C. § 2671.

20        The FTCA "was never intended, and has not been construed by [the Supreme] Court,

21  to reach employees or agents of all federally funded programs that confer benefits on people."

22

23      [3]  In his summary judgment response, plaintiff appears to argue, for the first time, that
the government had a nondiscretionary duty to perform a Central Inmate Monitoring (CIM)
evaluation of his attackers in light of the fact that one of those attackers held "a similar CIM

24  status." Dkt. No. 27 at 7.  However, the authority relied upon for this new allegation, *Alfrey v.*

25  *United States*, held that CIM evaluations are generally discretionary save for the narrow
circumstance of a prisoner serving time in federal prison "solely in the service of [a] state

26  sentence."  *Alfrey*, 276 F.3d at 562 (quoting 28 C.F.R. § 524.73(a)(2)).  Because plaintiff has
failed to generate a genuine issue of material fact that any of his attackers fall into this narrow
exception, his belated argument cannot survive summary judgment.

REPORT AND RECOMMENDATION
PAGE - 11

01 *Orleans*, 425 U.S. at 813.  To that end, while the statutory definition of "employee" includes

02 "federal agenc[ies]," its definition of "federal agency" specifically *excludes* "any contractor

03 with the United States."  28 U.S. § 2671; *see also Frazier v. United States*, 481  F. Supp. 645,

04 646 (N.D. Cal. 1979) ("A contractor with the United States is not a federal agency.").

05 Accordingly, if the providers at Willamette Valley Medical Center and Legacy Emanuel

06 Hospital are considered "contractors" of the United States, they are not employees capable of

07 subjecting the United States to liability under the FTCA.

08        "'The critical test for distinguishing an agent from a contractor is the existence of

09 federal authority to control and supervise the "detailed physical performance" and "day to day

10 operations" of the contractor, and not whether the agency must comply with federal standards

11 and regulations.'" *Carrillo v. United States*, 5 F.3d 1302, 1304 (9th Cir. 1993) (quoting

12 *Ducey v. United States*, 713 F.2d 504, 516 (9th Cir. 1983)).  The record reflects, and plaintiff

13 does not dispute, that Willamette Valley Medical Center and Legacy Emanuel Hospital

14 contracted with the United States to provide ancillary medical care to prison inmates.  *See*

15 Dkt. No. 26 at 4, ¶ 8; Dkt. No. 25, Ex. E.  Under the terms of FCI's contract with these

16 hospitals, "[t]he Government . . . *retains no control over professional aspects of the services*

17 *rendered, including by example, the Contractor's professional medical judgment, diagnosis,*

18 *or specific medical treatments*."  Dkt. No. 25, Ex. E at 8 (emphasis added).

19        Plaintiff has failed to usher a single material fact disputing the lack of FCI control and

20 supervision over the "detailed physical performance and day to day operations" of Willamette

21 Valley Medical Center and/or Legacy Emanuel Hospital.  *Carrillo*, 5 F.3d at 1304 (internal

22 quotations omitted).  Because these hospitals are contractors for purposes of the FTCA, their

23 negligent acts or omissions cannot impute liability to the United States in this case.

24

25

26                    V.   FURTHER PROCEEDINGS IN THIS CASE

        Because only the United States moved for summary adjudication and a separate entry

REPORT AND RECOMMENDATION
PAGE - 12

01 of judgment in this matter, this case is not terminated as to plaintiff's *Bivens* claims against

02 Warden Hood and the two unnamed FCI correctional officers.   The Court hereby refers these

03 remaining claims back to the Honorable Ricardo S. Martinez for purposes of setting a

04 schedule for trial.

05                                                 VI.   CONCLUSION

06            It is extremely unfortunate that plaintiff was brutally attacked and the Court

07 sympathizes with the trauma he has suffered.   However, as a matter of law, the United States

08 is immune from suit under the FTCA for judgments which constitute an exercise of a

09 discretionary function.   Furthermore, the torts of federal government contractors cannot be

10 attributed to the United States under the FTCA.   Accordingly, the Court recommends that

11 defendant United States of America's Motion for Partial Summary Judgment (Dkt. No. 25) be

12 GRANTED and a final judgment entered in its favor pursuant to Fed. R. Civ. P. 54(b).   A

13 proposed order accompanies this Report and Recommendation.

14            DATED this 21st day of December, 2006.

15

16                                                      *James P. Donohue*

17                                                      JAMES P. DONOHUE
                                                            United States Magistrate Judge

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE - 13